IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JERRY LEE HAWKINS                                                                                    PLAINTIFF

        v.                              Civil No. 4:11-cv-04029

LT. STEVEN GLOVER; CPT. JOHNNY
GODBOLT; DR. JOAN MCLEAN; and
CPT. LOUISE PHILLIPS                                                                              DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

    This is a civil rights action filed by Plaintiff, Jerry Hawkins, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U. S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  An evidentiary hearing was held on April 1, 2013.  Neither party has requested a jury.  The case is now ready for decision.

    Plaintiff is currently incarcerated in Arkansas Department of Corrections East Arkansas Regional Unit in Brickeys, Arkansas.  The events at issue in this case occurred while Plaintiff was incarcerated in the Hempstead County Detention Center ("HCDC").  Specifically, Plaintiff maintains Defendants denied him medical care regarding his injured left wrist.

**I.     BACKGROUND AND EVIDENCE**

    At the evidentiary hearing, the testimony of the following witnesses was heard: (1) Plaintiff Jerry Hawkins; (2) Defendant Nurse Joan McClean; (3) Defendant Lt. Steven Glover; and (4) Defendant Captain Johnny Godbolt.  For purposes of this Report and Recommendation, the

1

testimony of the witnesses will be briefly summarized.

**Plaintiff Jerry Hawkins**

On April 28, 2009 Plaintiff fell while in C-Pod of the HCDC and hurt his left wrist. Plaintiff testified he saw Nurse McClean on April 30, 2009. Nurse McClean examined his wrist and prescribed him Tylenol or some other lower level pain medication. Nurse McClean also gave Plaintiff a brace to wear on his wrist. After this initial diagnosis, Plaintiff submitted medical requests with statements that his wrist continued to hurt and the pain medication was not working. Plaintiff testified Defendants ignored or denied his medical requests, failed to x-ray his wrist, failed to provide him with proper medical care, and failed to follow HCDC policies and procedures. Plaintiff also testified that Nurse McClean continued to see him after his initial examination but she refused to send him to a doctor outside of the HCDC or send him for x-rays. Additionally, Plaintiff testified Nurse McClean is not at the HCDC everyday so he also saw a Nurse Lori Jones, LPN regarding his wrist.

Plaintiff was released from the HCDC from June 2009 through August 2009 and he did not seek treatment of his wrist while he was out of jail. *See* Pls' Ex. 1B.

Plaintiff testified it was Lt. Glover's responsibility to review inmate medical requests and ensure the inmates received the medical care they needed. According to Plaintiff, Lt. Glover knew of Plaintiff's situation and denied him visits to a doctor outside the HCDC. Plaintiff also testified he spoke with Lt. Glover and requested an x-ray, but Lt. Glover told Plaintiff the HCDC would not pay for an x-ray.

Additionally, Plaintiff testified Captain Godbolt knew of Plaintiff's situation and failed to ensure Plaintiff received the medical care he required.

Plaintiff was transferred to the Arkansas Department of Corrections East Arkansas Regional Unit ("ADC") on December 18, 2009. According to Plaintiff, on December 21, 2009, Plaintiff was evaluated by Dr. Hughes at the ADC and an x-ray was taken of his wrist. Plaintiff testified he was placed on one arm duty after this exam and Dr. Hughes stated his wrist was permanently deformed.

Plaintiff also testified he lied to the ADC when he stated in the August 6, 2010 medical request that Dr. McClean prescribed him Neurotin 300 milligrams for his pain in his wrist. Defs' Ex. 3. Additionally, Plaintiff testified that the ADC has not approved surgery for his wrist.

Plaintiff's medical records from the ADC indicate he was placed on one-arm duty in December 2009 but an x-ray was not ordered on his wrist until September 23, 2010. *See* Pls' Ex. 2. The x-ray indicated "a subacute to chronic lunate dislocation with widening of the scapholunate distance and proximal migration of the capitate." *See* Pls' Ex. 2. On February 16, 2011, a notation is made in Plaintiff's ADC records that Plaintiff has decreased range of motion in left wrist with a "history of chronic left lunate fracture dislocation - awaiting ortho appointment." *See* Pls' Ex. 2. This same record prescribes continuation of wrist splint and pain medication. Plaintiff testified at the hearing that he is still being treated by the ADC with a splint and pain medication.

Regarding his injury, Plaintiff testified he suffers from chronic pain in his wrist. Specifically, it hurts all day and night and he has sharp pain every 8 - 10 seconds that lasts 2 - 3 seconds. It feels as if a hammer is hitting him in the wrist. Plaintiff explained that on a scale from 1 - 10 his pain level is a 10. Additionally, Plaintiff has trouble sleeping, has no grip, and his hand goes numb. Finally, Plaintiff currently takes pain medication every day for his wrist.

**Nurse Joan McClean**

Nurse Joan McClean is a nurse practitioner employed by the HCDC. Nurse McClean

testified she examined Plaintiff on April 30, 2009 and diagnosed him with left wrist pain. Nurse McClean explained that her initial examination of Plaintiff consisted of: examining the tissue around his wrist, his movement in the wrist, and also evaluating the tenderness, swelling, and discoloration of the wrist. Nurse McClean testified this initial evaluation did not warrant ordering an x-ray. Nurse McClean further testified that ordering an x-ray is not always the first treatment option in a situation such as this so she waited to see if her prescribed treatment worked before ordering an x-ray. Additionally, Nurse McClean testified it was her medical opinion that a splint and pain medication was the appropriate treatment for Plaintiff's wrist. Nurse McClean prescribed Plaintiff Naproxen (a nonsteroidal anti-inflammatory), and Percogesic (pain reliever) and provided him a wrist splint. *See* Pls' Ex. 1.

Nurse McClean also testified that the protocol at the HCDC is for inmates to first see her and then, if necessary, they are taken to the emergency room or a doctor's appointment is made. Nurse McClean further testified it was her medical opinion that Plaintiff did not need to see a doctor or go to the emergency room on April 30, 2009.

Nurse McClean did admit the only way to know whether Plaintiff's wrist was fractured was to x-ray it, however, her subsequent evaluations of Plaintiff indicated her prescribed treatment—a brace and pain medication—helped Plaintiff's wrist by decreasing the pain and swelling. Plaintiff also told Nurse McClean at one visit that the new pain medications she prescribed helped his pain. Further, Nurse McClean testified she believed she provided the correct and appropriate treatment to Plaintiff as a splint was appropriate treatment for either a sprain or a fracture because it immobilizes the wrist.

Additionally, Nurse McClean testified she eventually determined an x-ray to be medically

necessary and ordered it on September 10, 2009 (Pls's Ex. 1), however, an appointment outside the facility has to be approved by the captain of the HCDC. Nurse McClean initially testified Captain Godbolt was the jail administrator when Plaintiff injured his wrist, but she then testified it was Captain Louise Phillips' decision not to take Plaintiff to have his wrist x-rayed.[1]

Nurse McClean further testified she did not deny Plaintiff a visit with a doctor, and she provided him with the treatment and medication she deemed medically necessary and that was at her disposal as a nurse practitioner at the HCDC. Lastly, Nurse McClean testified she followed HCDC polices and procedures and the law in treating Plaintiff.

**Lt. Steven Glover**

Lt. Glover is currently the Assistant Jail Administrator at the HCDC under Jail Administrator Captain Johnny Godbolt. Prior to this position Lt. Glover worked as assistant Jail Administrator under Captain Louise Phillips. Lt. Glover testified Captain Phillips was the Jail Administrator in April 2009.

Lt. Glover testified he remembered the accident that injured Plaintiff's wrist on April 28, 2009 but he had no knowledge of Nurse McClean ordering x-rays for Plaintiff. Lt. Glover further testified he does not see medical requests of inmates or arrange medical appointments for inmates outside of the HCDC. According to Lt. Glover, Captain Phillips would have been the person responsible for arranging an x-ray for Plaintiff once Nurse McClean ordered it.

---

[1] The Court notes that Nurse McClean (along with Lt. Glover and defense counsel) were unsure as to whether Captain Phillips or Captain Godbolt was acting Jail Administrator of the HCDC at the times in issue of this case. For this reason the Court, will not credit Nurse McClean's testimony as to who denied the x-ray; but instead, the Court relies documentary evidence cited later in this Report and Recommendation as a more reliable source of the date Captain Phillips left the HCDC.

Lt. Glover testified he did not remember when Captain Phillips was placed on administrative leave, however, if the x-rays were ordered after Phillips left it would have been Captain Godbolt's responsibility to arrange for Plaintiff's x-ray appointment. Lt. Glover testified Captain Godbolt was the acting Jail Administrator once Captain Phillips was placed on administrative leave.

**Captain Johnny Godbolt**

Captain Godbolt testified he became the Jail Administrator of the HCDC in the later part of 2009, but he also testified that he became acting Jail Administrator at the time Captain Phillips was suspended.

Captain Godbolt further testified he never noticed Plaintiff's wrist injury and never discussed the injury with Plaintiff. Captain Godbolt did testify he heard "hearsay" of Plaintiff's wrist injury, but also testified he had no knowledge that Plaintiff needed an x-ray. Finally, Captain Godbolt testified that Nurse McClean's September 2009 order to send Plaintiff for an x-ray was not sent to his administration. According to Captain Godbolt, it was Captain Phillips administration that received the order for Plaintiff to be sent for an x-ray.

At the conclusion of the testimony, the Court requested defense counsel obtain the exact dates of Captain Phillips suspension and subsequent termination as Jail Administrator for the HCDC as this information was not available in the evidence presented at the hearing. Defense counsel responded to the Court's request with an August 25, 2009 letter from Sheriff Jerry Crane to Captain Phillips. In this letter Sheriff Crane explains Captain Phillips was placed on administrative leave on July 6, 2009 and the Sheriff terminated Captain Phillips, in this same letter,

6

effective September 1, 2009.[2]

## II.　DISCUSSION

As an initial matter, Defendant Phillips was never served. The Court first ordered service on Defendant Phillips at the HCDC on January 13, 2012. ECF No. 25. On February 21, 2012, the summons was returned unexecuted with a notation by the Marshal that Phillips moved to 5383 Loving Drive, Baton Rouge, Louisiana 70812. ECF No. 28. On August 24, 2012, the Court ordered service on Defendant Phillips at 5383 Loving Drive, Baton Rouge, Louisiana. ECF No. 34. The summons was returned unexectued with a notation by the Marshal: "No such address. Attempted to locate another address by contacting Plaintiff however was unsuccessful." ECF No. 36. [3]

Accordingly, I recommend all claims against Defendant Phillips be dismissed without prejudice and she be dismissed from this action. *See* Fed. R. Civ. P. 4(m); *see also Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993) (it is the responsibility of a prisoner proceeding *pro se* and *in forma pauperis* in a section 1983 action to provide the court with an address for proper service). Additionally, I recommend Plaintiff be advised he may refile a complaint against Defendant Phillips if he locates her before the statute of limitations runs.

### A.　Denial of medical care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted

---

[2] The Court marks the August 25, 2009 Letter from Sheriff Jerry Crane as the Court's Exhibit 1.

with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised

8

independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).

The Court notes Plaintiff's wrist was diagnosed by Nurse McClean as needing medical treatment, and therefore, qualifies as a serious medical need. *Schaub v. VonWorld,* 638 F.3d 905, 914 (8th Cir. 2011). Furthermore Plaintiff's wrist was broken also qualifying his injury as a serious medical need. *See Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (a broken hand constitutes a serious medical need). Accordingly, the Court limits the remainder of its analysis to whether each Defendant was deliberately indifferent to Plaintiff's serious medical need.

**Nurse McClean**

Given the evidence presented at trial Plaintiff has failed to show Nurse McClean was deliberately indifferent to his medical needs. Plaintiff does not dispute that Nurse McClean examined his wrist and prescribed him pain medication and a splint on April 30, 2009—two days after Plaintiff's injury—or that she examined him on multiple occasions following his initial examination and continued to provide pain medication throughout the duration of his incarceration at the HCDC. Instead, Plaintiff's chief complaint against Nurse McClean is that she did not immediately send him outside of the HCDC for an x-ray of his wrist.

Plaintiff does not allege he was denied treatment by Nurse McClean, but instead, he merely disagrees with the course of treatment Nurse McClean provided him. This is insufficient to establish Nurse McClean was deliberately indifferent to Plaintiff's medical needs. *See Meuir v. Greene Coutny Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and his mere disagreement with the medical treatment he receives is not a basis for section 1983 liability). Nurse McClean testified she splinted Plaintiff's wrist and prescribed medication for Plaintiff's pain as a first course of treatment in order to determine if an x-ray were necessary. Further, Nurse McClean testified that in her medical opinion the treatment she provided Plaintiff was appropriate as a splint would be provided for a sprained or fractured wrist. Plaintiff did not produce any evidence to show the treatment provided by Nurse McClean was constitutionally inadequate. To the contrary, Plaintiff's medical records from the ADC establish that even after Plaintiff received an x-ray the medical professionals at the ADC continued to treat his wrist with the same treatment provided by Nurse McClean—a splint and pain medication. Additionally, Nurse McClean testified in her medical opinion the course of treatment provided to Plaintiff was appropriate. *See Meuir*, 487 F.3d at 1119 (in the face of evidence that medical treatment was provided and affidavits from medical provider indicating the care provided was adequate, an inmate cannot create a question of fact by merely asserting he did not receive adequate treatment).

Additionally, Nurse McClean testified that she did order an x-ray, on September 11, 2009, when Plaintiff returned to the HCDC and complained of continued wrist pain. Even if the Court construes Plaintiff's claim against Nurse McClean to be one for delay of medical treatment for a delay in ordering an x-ray of his wrist, the Court still finds no deliberate indifference on the part

10

of Nurse McClean.

Plaintiff injured his wrist on April 28, 2009, Nurse McClean began treating the wrist on April 30, 2009 with a splint and pain medication. Plaintiff was continuously provided pain medication until he was released from the HCDC in June 2009. *See* Plaintiff's Ex. 1B. Plaintiff did not return to the HCDC until August 16, 2009. *See* Plaintiff's Ex. 1B. Nurse McClean ordered the x-ray on September 11, 2009 less than one month from the day Plaintiff returned to the HCDC. While Nurse McClean's delay in ordering Plaintiff's wrist x-ray may have been negligent, it does not rise to the level of deliberate indifference. *See e.g., Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be merely negligent); *see also Bryan v. Endell,* 141 F.3d 1290 (8th Cir. 1998) (the delay in treating prisoner's broken hand rendering surgery impractical was merely negligent and did not rise to deliberate indifference as there was no evidence showing officials actually knew of the risk of harm but deliberately failed to act amounting to callousness); *see also Pietrafeso v. Lawrence County,* 452 F.3d 978, 983 (8th Cir. 2006) (showing of deliberate indifference is greater than gross negligence).

Finally, the evidence indicates Nurse McClean prescribed Plaintiff pain medication continuously from her initial evaluation of Plaintiff's wrist. Therefore, Plaintiff was not left to suffer in pain without treatment of his wrist.

Accordingly, I find the evidence shows Nurse McClean was not deliberately indifferent to Plaintiff's wrist injury.

**Lt. Glover**

Deliberate indifference may be manifested by "prison guards in intentionally denying or

11

delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).

Plaintiff testified it was Lt. Glover's responsibility to review inmate medical requests, and Lt. Glover knew of Plaintiff's wrist injury but denied him visits to a doctor outside the HCDC because the HCDC would not pay for the visit. To the contrary, Lt. Glover testified it was not his responsibility as assistant jail administrator to review inmate medical request, and he had no knowledge Nurse McClean ordered x-rays for Plaintiff. According to Lt. Glover, Captain Phillips would have been the person responsible for arranging an x-ray for Plaintiff once Nurse McClean ordered it, or if Captain Phillips was already suspended, Captain Godbolt would need to arrange for Plaintiff's x-ray appointment.

Additionally, according to Nurse McClean and Captain Godbolt the procedures of the HCDC were that Nurse McClean issued orders for medical service outside of the HCDC, but it was the Captain of the HCDC that approved and arranged for such appointments.

The Court finds Lt. Glover, Nurse McClean, and Captain Godbolt's testimony regarding the HCDC procedures for outside medical appointments credible. Further, Lt. Glover's testimony that it was not his responsibility set up outside medical appointments for inmates comports with the stated HCDC policy for scheduling outside medical appointments. Accordingly, I find the evidence shows Lt. Glover was not involved in the process of scheduling Plaintiff an outside medical appointment. Therefore, Lt. Glover was not deliberately indifferent to Plaintiff's serious medical needs. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir.1997) (no evidence that the

defendants were doctors or were personally involved in making medical decisions about treatment).

Further, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). In other words, Lt. Glover cannot be held liable merely because he holds a supervisory position at the HCDC. *Id.*

Accordingly, I find the evidence shows Lt. Glover was not deliberately indifferent to Plaintiff's wrist injury.

**Captain Godbolt**

As stated above, Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). However, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell,* 436 U.S. at 694. "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). In other words, Captain Godbolt cannot be held liable merely because he holds a supervisory position

at the HCDC. *Id.*

Plaintiff testified Captain Godbolt knew of Plaintiff's situation and failed to ensure Plaintiff received the medical care he required. According, to Captain Godbolt, Lt. Glover and Nurse McClean the standard procedure at the HCDC is that once Nurse McClean orders an outside medical appointment for an inmate, the Jail Administrator must approve the order and arrange for the appointment.

Captain Godbolt testified that he had no knowledge of Nurse McClean's September 11, 2009 x-ray order for Plaintiff because that order went to Captain Phillips' administration not his. However, Captain Godbolt testified he became acting Jail Administrator at the time Captain Phillips was suspended. The Court's Exhibit 1 shows Captain Phillips was placed on administrative leave on July 6, 2009, and terminated on September 1, 2009.

Given this evidence along with Captain Godbolt's testimony that he became acting jail administrator when Captain Phillips was suspended, the Court cannot credit his testimony that it was Captain Phillips that received Nurse McClean's September 11, 2009 order for an x-ray. The evidence shows Nurse McClean's order for x-ray of Plaintiff's wrist came after Captain Godbolt replaced Captain Phillips as Jail Administrator for the HCDC. Therefore, according to all of the HCDC Defendants' testimony regarding the standard procedures at the HCDC, it would have been Captain Godbolt who received Plaintiff's x-ray order for approval and arrangement. Captain Phillips was, suspended or placed on, administrative leave at least two months prior to Nurse McClean's September 11, 2009 x-ray order for Plaintiff's wrist.

Accordingly, the question becomes whether Captain Godbolt was deliberately indifferent in failing to send Plaintiff to have an x-ray in the face of Nurse McClean's medical order

14

indicating an x-ray of Plaintiff's wrist was necessary. I believe he was. According to the evidence, it was Captain Godbolt's responsibililty to approve and arrange for appointments outside the HCDC, such as Plaintiff's x-ray appointment. Nurse McClean ordered Plaintiff receive the x-ray but Plaintiff was never taken for the x-ray. There was no evidence that the standard procedure of the HCDC was deviated from in this instance. Therefore, the Court must conclude Captain Godbolt, as Jail Administrator, intentionally interfered with Nurse McClean's prescribed treatment of Plaintiff and refused to approve and arrange for Plaintiff's wrist x-ray. This interference constitutes deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976); *see also Schaub v. VonWald*, 638 F.3d 905, 916 (8th Cir. 2011) ("the factual determination that an official had the requisite knowledge of a substantial risk may be inferred from circumstantial evidence . . . .").

Further, Plaintiff testified that Lt. Glover told him the HCDC would not pay for his wrist to be x-rayed. While, the Court recognizes that Lt. Glover had no responsibility for arranging appointments, this statement provides evidence of why Captain Godbolt failed to approve and arrange for the x-ray—the HCDC did not want to pay for the procedure. The HCDC may not withhold necessary medical treatment from an inmate based on monetary concerns. *See Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987) (prison officials may not condition medical treatment on the inmate's ability or willingness to pay).

Accordingly, I find the evidence shows Captain Godbolt was deliberately indifferent to Plaintiff's wrist injury.

  B.  <u>Damages</u>

While the Plaintiff testified as to the constant pain he continues to suffer from his wrist

injury, the evidence presented renders it difficult for the Court to determine how much of Plaintiff's pain and suffering stem from Captain Godbolt's deliberate indifference. Specifically, while the Court finds Captain Godbolt intentionally ignored an order from Nurse McClean to x-ray Plaintiff's wrist, and Plaintiff obviously suffered a physical injury to satisfy the Prison Litigation Reform Act requirements[3] (a broken wrist), the Court cannot find on the record before it, that Captain Godbolt's failure to schedule the x-ray caused all of Plaintiff's continuous and lasting wrist pain. Plaintiff testified that the medical professionals at the ADC continue to treat his wrist with a splint and pain medication—the exact treatment provided by Nurse McClean prior to Plaintiff's transfer and subsequent x-ray—but have not provided him surgery even though the x-ray indicated his wrist was fractured with dislocation. Given this testimony it is impossible for the Court to determine how much of Plaintiff's lasting wrist pain may be attributed to Captain Godbolt's deliberate indifference and how much to the fact that he still has not received any corrective procedures for his fractured wrist.[4]

Accordingly, I recommend awarding Plaintiff $1 in nominal damages against Captain Godbolt. *See Cowans v. Wyrick*, 862 F.2d 697, 699 (8th Cir. 1988) (a nominal damages award is

---

[3] Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 19979(e); *see also Royal v. Kautzky*, 375 F.3d 720, 726 (8th Cir. 2004) (the PLRA limits recovery for mental or emotional injury in all federal actions brought by prisoners).

[4] The Court notes it is merely crediting Plaintiff's testimony indicating he has been advised he needs a corrective surgery on his wrist. There are no medical records from the ADC to indicate Plaintiff has been prescribed such surgery by a medical professional, and the Court has no opinion on the level of care currently being provided to Plaintiff by the ADC. That is not an issue before this Court, and this Report and Recommendation should not be construed to assert any opinions as to whether the ADC is providing appropriate medical care for Plaintiff at this time.

required when the fact finder has determined injury, pain, and suffering has occurred but is unable to convert that pain and suffering into dollars).

### III.    CONCLUSION

Accordingly, I recommend Plaintiff's claims against Nurse McClean and Lt. Glover be **DISMISSED** with prejudice and Plaintiff's claims against Captain Louise Phillips be **DISMISSED** without prejudice.  Further, I recommend judgment be entered against Defendant Captain Johnny Godbolt and $1 in nominal damages be awarded in favor of Plaintiff against Captain Godbolt.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **20th day of June 2013.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE